UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARNOLD LEON SCHROEDER, JR. | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0525-B |
| | § | |
| KERN WILDENTHAL, EDWARD A. | § | |
| COPLEY, HARRY S. PARKER, III, | § | |
| GEORGE CHARLTON, IRVIN LEVY, | § | |
| and the DALLAS MUSEUM OF ART, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) (docs. 19, 20, 21), filed June 9, 2011. For the reasons stated below, the Court finds that the Defendants' Motions are hereby **GRANTED** and that Plaintiff's claims should be and hereby are **DISMISSED with prejudice**.

### I.

### BACKGROUND

This case arises out of a dispute over a transfer of property by Wynelle Reves ("Wendy Reves"). Plaintiff Arnold Schroeder ("Schroeder") is the only son of Wendy Reves, a philanthropist who was born in America but lived most of the latter part of her life in France. Pl.'s Am. Compl. ("Am. Compl.") ¶¶ 10-11. Under French law, Schroeder is the "reserved heir" of Wendy Reves. *Id.* at ¶ 11. Consequently, as her only child, Schroeder is entitled to 50% of her estate. *Id.* at ¶ 11.

After divorcing from Schroeder's father, Wendy Reves married Emery Reves, a wealthy author and financier. *Id.* at ¶¶ 17-18. Both before and after his marriage to Wendy Reves, Emery Reves collected numerous pieces of art ("the Collection") with a value that was estimated as high as $400,000,000.00. *Id.* at ¶ 20. Schroeder alleges that Emery and Wendy Reves established a number of corporate sham entities during their marriage in order to avoid taxation on their substantial property. *Id.* at ¶¶ 22-44. As a result, the Reves did not own all of their property in their names; some of their property, such as the villa where they resided in France, "Villa La Pausa," were placed in the name of a corporate entity. *Id.* at ¶ 22.

Emery Reves died in 1981, and the following year, three members of the Dallas Museum of Art ("DMA") – Harry Parker, George Charlton, and Irvin Levy – visited Wendy Reves. *Id.* at ¶ 49. On May 31, 1983, Wendy Reves signed a Donation Agreement that purported to donate a majority of the Collection to the DMA. *Id.* at ¶ 50. Schroeder alleges that Wendy Reves was convinced to donate the Collection in part because the DMA agreed to build a replica of several of the rooms of Villa La Pausa. *Id.* at ¶ 51. Schroeder further alleges that, in order to validate the transfer, the DMA Members created a number of sham corporate entities and trusts, such as the Wendy and Emery Reves Foundation, to circumvent France's reserved heirship rule. *Id.* at ¶¶ 51-58. By doing so, the DMA laundered Wendy Reves' possessions, notably the Collection, which deprived Schroeder of the possibility of inheriting this property. *Id.* at ¶ 89.

In 1993, ten years after having donated the Collection to the DMA, Wendy Reves first met Dr. Kern Wildenthal, who was then the President of the University of Texas Southwestern Medical Center, at a social event in Dallas. *Id.* at ¶ 61. By Plaintiff's account, Wildenthal recognized Wendy Reves as a "mark" for his fund-raising, and persuaded her to donate millions of dollars over the next

several years to various causes of his choice. *Id.* at ¶¶ 61-62. Sometime around 1998, Wildenthal introduced Wendy Reves to Edward Copley, a Dallas attorney, and then pressured her to sign a will (the "Will"). *Id.* at ¶ 63. The Will appointed Wildenthal as sole executor of Wendy Reves' estate and established another foundation, the Wendy and Emery Reves Charitable Foundation ("WERCF"). *Id.* at ¶ 65. In the course of performing legal services for Wendy Reves, Copley allegedly made several attempts to evade tax laws on her estate. *Id.* at ¶¶ 69-73. Additionally, in 2000, Wendy Reves signed a power-of-attorney that purportedly gave Copley authority over her bank accounts. *Id.* at ¶¶ 74-77. However, because the power of attorney was never notarized, Schroeder claims that it is invalid. *Id.* at ¶ 77. After Wendy Reves' death in 2007, Copley claimed that Wendy Reves was a Swiss citizen and should be subject to Swiss estate law; however, a Swiss court rejected this claim. *Id.* at ¶ 85. Thus, French law governs Wendy Reves' estate. *Id.* at ¶¶ 85-86.

Schroeder's central argument is that he has been deprived of his rightful share of his mother's estate as a result of actions taken by the three named Defendants: the Dallas Museum of Art, Kern Wildenthal, Jr., and Edward Copley (together, the "Defendants"). Schroeder alleges that the Defendants collectively committed fraud[1] because they were aware that Wendy Reves owned the Collection in her personal capacity and that the sham corporations held only color of title as to the collection. Through such actions, the Defendants conspired to circumvent the French forced

---

[1] Schroeder made a number of additional claims in his Amended Complaint, including claims for conversion, tortious interference with inheritance rights, and misapplication of fiduciary property. In his Response to the Motions to Dismiss, Schroeder "elected not to pursue these claims further," but never filed an Amended Complaint or sought to dismiss these claims. Accordingly, these claims are **DISMISSED** and the Court will not address them in this Order.

heirship laws, which would have led to Schroeder's direct inheritance of 50% of the Collection.[2] As a result, Schroeder argues that DMA holds the Collection in constructive trust. Defendants deny these allegations and each one has filed a Motion to Dismiss, arguing that Schroeder has failed to state a claim upon which relief can be granted, and even if his claims were cognizable, they would be barred by the relevant statutes of limitations.

## II.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a clam to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

---

[2] For Schroeder to inherit the property in question, he would have to demonstrate that it was legally part of Wendy Reves' estate. This Court will not, of course, decide that question, and will assume at this stage that the forced heirship statute would apply to the Collection.

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadilac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Nevertheless, it is well established that dismissal under Fed. R. Civ. P. 12(b)(6) is warranted where an affirmative defense, such as the statute of limitations, is apparent on the face of the plaintiff's complaint. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003); *Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994).

## III.

## ANALYSIS

Defendants contend that Schroeder's claims fail as a matter of law because he has failed to state a claim for fraud that satisfies the pleading standard under Fed. R. Civ. P. 9(b), and has similarly failed to plead facts that would satisfy a claim of conspiracy. Defendants further argue that Schroeder has not alleged any fiduciary relationship, which they argue is required for a claim of constructive fraud. Alternatively, Defendants argue that each of Schroeder's claims for relief is time-barred by the relevant statutes of limitations.

Schroeder counters that a claim of constructive fraud need not satisfy the standard enumerated in Rule 9(b), and the applicable statutes of limitations periods are tolled by virtue of the discovery rule. Schroeder additionally argues that a claim of civil conspiracy is cognizable because the Defendants acted, even if separately, to obtain Schroeder's rightful property by fraud. The Court will address these arguments in turn.

*A. Constructive Fraud*

Schroeder first claims that the Defendants have committed either legal or constructive fraud.[3] Under Texas law, constructive fraud involves "the breach of some legal or equitable duty . . . that the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1965). Unlike actual fraud, constructive fraud does not require any intent to deceive. *Id.* According to Schroeder, then, each of the named Defendants has committed constructive fraud by inducing Wendy Reves to donate her property, either personally or through a corporate entity, which has resulted in circumventing French laws of forced heirship. Defendants argue in response that constructive fraud, unlike actual fraud, requires the plaintiff to show a breach of some legal or fiduciary duty. Without the allegation of facts, the Defendants claim that any claim of fraud must be dismissed.

    i.        Constructive Fraud and Breach of Legal Duty

Schroeder asserts that a claim of constructive fraud does not require a breach of legal duty. Rather, Schroeder argues that a fiduciary relationship is unnecessary because constructive fraud has "fuzzier edges." Pl. Resp. 9. In fact, Schroeder himself concedes that this doctrine is only a

---

[3] Texas courts, as well as both parties, have used the terms legal and constructive fraud interchangeably. This Court will use the term "constructive fraud."

"shorthand for the wrong" that Defendants have committed. *Id.* at 16. To make this point,

Schroeder relies heavily on a concurring opinion by Judge Wiener in the Fifth Circuit that concludes

that Texas state law takes a flexible approach to constructive law, and therefore does not necessarily

require a fiduciary duty. *In re Soza*, 542 F.3d 1060, 1073-75 (5th Cir. 2008) (Wiener, J., specially

concurring). However, as Judge Wiener also noted in his concurrence, there was an equitable duty

at issue between the relevant parties. *Id.* at 1075-76. Furthermore, a number of courts have stated

unequivocally that a fiduciary duty, or at least some duty resembling a fiduciary duty, is necessary

to allege a constructive fraud cause of action. *See, e.g.*, *In re Hollis*, Bankruptcy No. 09-40483,

Adversary No. 09-4066, 2011 WL 1168403, at *12 (Bankr. E.D. Tex. March 29, 2011); *Ternium*

*Intern. USA Corp v. Consolidated Systems, Inc.*, No. 3:08-CV-0816-G, 2009 WL 804119, at *5 (N.D.

Tex. March 25, 2009) (Fish, J.) (dismissing a counterclaim for constructive fraud because the

defendant did not plead that it was owed a fiduciary duty); *Humble Emergency Physicians, P.A. v.*

*Mem'l Hermann Healthcare Sys., Inc.*, No. 01-09-00587-CV, 2011 WL 1584854, at *8 (Tex.

App.–Houston April 21, 2011, no pet.) (noting that because the defendant did not owe a fiduciary

duty, the plaintiff could not establish a claim for constructive fraud).

Despite the doctrinal difference between actual and constructive fraud, then, Schroeder has

not pleaded any legal relationship binding the Defendants to Wendy Reves. Even if this Court were

to agree with Schroeder and find that a fiduciary duty is not required for a claim of constructive

fraud, it is undisputed that the Defendants would need to show some duty to support this claim.

Schroeder has failed to address this point. The encounters described in the Complaint allege that

both the DMA and Wildenthal preyed on Wendy Reves because she was elderly and susceptible to

flattery, not because of a relationship based on trust or confidence. Schroeder also fails to allege any

explicit duty owed by Copley, but as Wendy Reves' attorney, such a relationship could support a claim of constructive fraud. But Schroeder fails to allege that Copley did not act in accordance with Wendy Reves' demands, and states only that she failed to read the will that Copley prepared, and signed it after he pressured her to do so. Schroeder does not suggest that this conduct would constitute a breach of any legal duty that Copley owed to her, nor has he offered any legal authority to suggest that such an action would constitute constructive fraud. Thus, the claims of constructive fraud are insufficient as a matter of law because they fail to allege a breach of any legal or equitable duty owed to Wendy Reves.

ii.     Rule 9(b) and Constructive Fraud

Defendants also argue that Schroeder's allegations fail to satisfy the higher pleading standard required by Rule 9(b). Schroeder, on the other hand, argues that constructive fraud need not satisfy Rule 9(b), but even if it did, the Amended Complaint would satisfy that standard. The Court agrees with the Defendants that Schroeder's claim of fraud is subject to the heightened pleading requirement, and fails to meet it.

Rule 9(b) requires that the party claiming fraud "must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit has clarified that a plaintiff must "specify statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") If a

complaint fails to adhere to this standard in pleading a claim of fraud, it may be dismissed at the pleading stage for failure to plead with particularity. *See United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 329 (5th Cir. 2003). Although the Fifth Circuit has not decided whether a claim of constructive fraud must satisfy the higher pleading standards under Rule 9(b), this Court has said on several occasions that a plaintiff must do so in order to defeat a motion to dismiss. *See Litson-Gruenber v. JP Morgan Chase & Co.*, No. 7:09-CV-056-O, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) (O'Connor, J.); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.*, No. 3:04-CV-2518-D, 2005 WL 1421446 (N.D. Tex. June 1, 2005) (Fitzwater, J.). This Court will not deviate from the accepted standard enumerated by this district.

In the present case, Schroeder's Complaint contains a long-winded, often meandering narrative, yet it fails to put the Defendants on notice of the fraud with any degree of particularity. The allegations can be summarized as such: the Defendants, sometimes in concert, exerted pressure on Wendy Reves to create a series of entities for the purpose of laundering her belongings to the DMA and other organizations in order to evade French estate laws. Yet there is a dearth of specificity in the Amended Complaint and the allegations are both generic and conclusory. Schroeder claims, for example, that Wildenthal encouraged Wendy Reves to sign the Will, yet fails to address how this pressure was exerted. Am. Compl. ¶ 63. Schroeder's allegations about Copley are similarly general and in fact fail to explain why they constitute fraud. In the Amended Complaint, Schroeder lists a series of actions that Copley committed on her behalf, but fails to address in any manner how these decisions would violate any duty to Wendy Reves, or in what

fashion they were deceptive.[4] Additionally, though Schroeder argues that Copley committed fraud when he claimed that Wendy Reves was a Swiss resident, he also states that a Swiss court rejected this claim and found that her estate should be governed by French law. Am. Compl. ¶ 85. Given that Copley's claim about her residence, no matter how ill-conceived, did not result in any damage, it is clear that Texas law does not recognize it as fraud. Accordingly, the Court finds that Schroeder's allegations do not satisfy the heightened pleading requirements of Rule 9(b), and his claims for constructive fraud and breach of fiduciary duty fail under Rule 12(b)(6).

iii.     Statute of Limitations

Even if Schroeder's claims were cognizable and pleaded with particularity, they would be time-barred. The applicable statute of limitations for a claim of fraud is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002). In an action for fraud, the limitations period begins to run when the fraud is discovered, or should have been discovered in the exercise of reasonable diligence. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Defendants argue that the fraud complained of involves the donation of the Collection, which occurred in 1983; this would mean that the limitations period has long expired, unless Schroeder can establish that the fraud could not have been discovered at the time. In an attempt to evade the limitations period, however, Schroeder claims that his cause of action for fraud could not have accrued until after Wendy Reves died. The Court cannot agree with Schroeder's proposition that this action for fraud

---

[4] In his Amended Complaint, Schroeder claims that Copley instructed Wendy Reves to sign a power-of-attorney document that was never notarized, and is therefore invalid. Am. Compl. ¶¶ 74-77. Schroeder later claims that the invalid power-of-attorney was used to create WERCF. *Id.* at ¶ 89. Despite this, Schroeder never claims that Copley failed to comply with Wendy Reves' requests, or that he breached a duty to her. Furthermore, Schroeder makes no indication that he seeks to invalidate the power-of-attorney, or transactions made pursuant to the power-of-attorney. Therefore, the Court will not address these allegations separately from the above the discussion of constructive fraud.

did not accrue until 2007, 24 years after the Donation Agreement was signed.

Schroeder has failed to cite any case where a party that received a donation was required by law to return it nearly thirty years later. Rather, he relies heavily on cases from the mid-19th century that interpreted a Texas forced heirship statute that provided that parents could only disinherit their children for specific, enumerated reasons. *Epperson v. Mills*, 19 Tex. 65, 1857 WL 5045 (Tex. 1857); *Crain v. Crain*, 17 Tex. 80, 1856 WL 4967 (Tex. 1856). The Texas Supreme Court interpreted this statute to guard against fraudulent "devices or donations" that effectively strip the children of the property that is secured to them. *See Crain*, 1856 WL 4967, at *8. The Court later clarified that a parent seeking to avoid the rigidity of the statute must make donations "absolutely," so that the donor does not merely hold the property in trust and no longer retains any interest. *Epperson*, 1857 WL 5045, at *3. Schroeder reads these cases to mean that any conveyance made in a jurisdiction with a forced heirship statute is, on its face, fraudulent. But such a broad reading not only disregards the Texas statute that the Texas Supreme Court was charged to interpret, but the subsequent development of the doctrine of constructive fraud. Furthermore, the above cases have had almost no discernable impact on Texas courts that have adjudicated claims of fraud. Though Schroeder argues that the Texas Supreme Court later analogized to these cases in applying the concept of illusory trusts, *see Land v. Marshall*, 426 S.W.2d 841, 847-48 (Tex. 1968), the Court subsequently limited illusory trusts "to instances in which a non-consenting spouse's property is used to fund a trust." *Westerfeld v. Huckaby*, 474 S.W.2d 189, 191 (Tex. 1972).

Schroeder's understanding of constructive fraud, then, is predicated on *Crain* and its progeny, but bears little relevance to the facts in this case and Texas' current understanding of constructive fraud. Thus, there is no basis for this Court to find that any transaction, no matter when it occurred,

is fraudulent per se because it has resulted in Schroeder inheriting less property than he believes he is entitled to. The effect of Schroeder's argument is that Wendy Reves would have had a viable cause of action against the Defendants for fraud, and even after the relevant limitations period had expired, the cause of action would again become ripe upon her death. Such a theory would completely evade Texas' statute of limitations for fraud and finds no support in either case law or under statute.

Schroeder also fails to raise any ground to establish grounds for tolling the statute of limitations under the discovery rule. Under Texas law, though a cause of action generally accrues when a wrongful act causes some injury, where an injury is "inherently undiscoverable and the evidence of the injury is objectively verifiable," the statute of limitations may begin to run only upon discovery of the injury. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 454, 455-56 (Tex. 1996). "The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *Id.* at 456 (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988)). Schroeder claims that as a result of the Defendants' fraud, he could not have known about the relevant facts until after her death. However, as this Court has made clear, a party pleading fraudulent conceal "must plead sufficient *facts* to place the defendants on notice of the tolling theory." *Vernon v. City of Dallas*, No. 3:08-CV-1068-B, 2009 WL 2486033, at *5 (N.D. Tex. Aug. 13, 2009) (Boyle, J.) (emphasis in original). The claim that the injury was "inherently undiscoverable" until after Wendy Reves's death is a conclusion that is unsupported by any alleged facts that would indicate a basis for the application of the discovery rule. Indeed, the donation of the Collection to the DMA occurred in 1983, and Schroeder cites to public filings by Copley that

purported to establish a corporation that would inherit her assets following her death. Am. Compl. ¶¶ 78-80. The claim that these injuries were undiscoverable merely states a conclusion. Although it may be possible that Schroeder was unaware of the Defendants' alleged actions, he must show that he is plausibly entitled to toll the statute of limitations period. *Iqbal*, 19 S. Ct. at 1949. He has failed to do so, and thus the Court finds that the statute of limitations bars a claim of constructive fraud.

Accordingly, Schroeder's claim for fraud must fail. He has failed to allege any legal or equitable relationship that would give rise to a finding of constructive fraud. Even if the Court were to find that his claims were sufficient to make a claim of constructive fraud, however, they would be barred by the applicable statute of limitations. For these reasons, Schroeder's claim of fraud is **DISMISSED with prejudice**.

*B. Conspiracy*

Schroeder next argues that the Defendants conspired to defraud Wendy Reves. Under Texas law, civil conspiracy is a derivative tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.") (citation omitted). Given that the Court has dismissed his claim of constructive fraud, Schroeder's claim of conspiracy must also fail. However, even if civil conspiracy did not depend on an underlying tort, Schroeder's Complaint would fail to allege a claim of conspiracy.

To maintain an action for civil conspiracy, a plaintiff must allege facts showing: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damage as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Though Schroeder concedes that the named Defendants

encountered Wendy Reves at different times, and did not actually develop a uniform plan, he claims

that they worked toward a common goal. For the claim of conspiracy to proceed, then, the Court

would have to accept the mere conclusion that the Defendants conspired together because each

wanted to benefit from her philanthropy as sufficient to defeat a motion to dismiss. Schroeder's

failure to specify how the disparate acts, acts that occurred between 1983 and 2007, amount to a

conspiracy, or when anything resembling a "meeting of the minds" occurred, is fatal to the claim of

conspiracy. While it may be true that juries must frequently infer the existence of a conspiracy based

on circumstantial evidence, Schroeder has failed to allege any plausible collection in his Amended

Complaint. He argues, for example, that "the DMA Defendants knew and intended there to be a

future will to complete the heist . . . . [Copley and Wildenthal] then entered the picture later to

accomplish precisely that end." Pl. Resp. 34. As the Supreme Court has made clear, a plaintiff must

plead more than "labels and conclusions" or offer a "formulaic recitation of the elements of a cause

of action" to defeat a motion to dismiss. *Iqbal*, 129 S. Ct. At 1949. Schroeder's claim of conspiracy

cannot meet this threshold. Accordingly, Schroeder's claim of conspiracy is **DISMISSED**.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby **GRANTED** and all

of Plaintiff's claims are **DISMISSED**.   Furthermore, Plaintiffs claims are **DISMISSED with**

**prejudice** because the Court has already given him an opportunity to amend in this case. *See Moini*

*v. Univ. Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *13 (W.D. Tex. Jan. 10, 2011);

*Swanson v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-041-D, 2010 WL 1779664, at *1 (N.D. Tex.

Apr. 29, 2010); *Maa v. Rollins-Cross*, No. 3:03-CV-2721-K, 2005 WL 81706, at *2 (N.D. Tex. Jan.

11, 2005). Furthermore, any future amendment to Plaintiff's Complaint would be futile, as he is procedurally barred from bringing his claim of constructive fraud under Texas law, which thus defeats his claim for civil conspiracy. Finally, any equitable remedy that would result from a finding of constructive fraud, including a constructive trust, is hereby **DENIED**.

      **SO ORDERED.**

      **DATED November 30, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE